IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division



FILED
AUG 11 2015
CLERK, U.S. DISTRICT COURT
NORFOLK, VA

JASON LEON DIEDRICH,

    Plaintiff,

v.                                                 CIVIL ACTION NO. 4:15cv2

THE CITY OF NEWPORT NEWS, VIRGINIA,
JAMES M. BOUREY,
Individually and as City Manager,
RICHARD W. MYERS,
Individually and as Chief of Police,
YVONNE M. MANNING,
Individually and as Director of Human Resources,

    Defendants.

### *MEMORANDUM OPINION AND ORDER*

This matter comes before the Court on a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) ("12(b)(6) Motion") by the City of Newport News, Virginia ("the City"), James M. Bourey, Individually and as City Manager; Richard W. Myers, individually and as Chief of Police; and Yvonne M. Manning, individually and as Director of Human Resources (collectively, "Defendants"), against Jason Leon Diedrich ("Plaintiff"), seeking dismissal of Plaintiff's Complaint brought under 42 U.S.C. § 1983 ("Section 1983") and Virginia state law.

The motion has been fully briefed, is ripe for judicial determination, and a hearing will not aid in the disposition. For the reasons set forth herein, Defendants' 12(b)(6) Motion to Dismiss Counts One and Two is **GRANTED**. The Court **DECLINES** to exercise jurisdiction over Plaintiff's state law claims (Count Three), and they are hereby **DISMISSED**.

## I. FACTUAL & PROCEDURAL HISTORY

The facts giving rise to this dispute date to 1995 and are recounted in greater detail in this Court's April 26, 2004 Order in a separate case resolved more than 10 years ago. *See Diedrich v. City of Newport News*, Civil Action No. 4:04cv9 (hereinafter "*Diedrich I*"). Briefly, Plaintiff was hired by the City of Newport News Police Department in 1991. Initially employed as a law enforcement officer, Plaintiff's employment was terminated in May 1995 after he was arrested and charged with grand larceny and perjury in April 1995. Acquitted of the charges, Plaintiff was reinstated in October 1996.

In October 2002, six years later, then-Chief of Police Dennis A. Mook transferred Plaintiff from his law enforcement position to a civilian position in the Records Division. Plaintiff's law-enforcement authority and permission to hold secondary employment (*i.e.*, moonlight) were rescinded at this time. Thereafter, Plaintiff filed a grievance and challenged his transfer to the Records Division as an illegal disciplinary and punitive action.

Unable to obtain relief through the grievance process, Plaintiff filed a Section 1983 suit in this Court, *Diedrich I*, alleging, *inter alia*, deprivation of liberty under the Fifth Amendment, and deprivation of due process under the Fourteenth Amendment of the United States Constitution. Specifically, Plaintiff alleged that his transfer to the Records Division was for punitive reasons and amounted to a demotion. Plaintiff also alleged a property interest in secondary employment. In addition, Plaintiff brought state law claims for intentional and negligent infliction of emotional distress.

The Court found that (1) Plaintiff had failed to assert a liberty interest under the Fifth Amendment because he remained employed, and (2) he had failed to assert a property interest under the Fourteenth Amendment because (a) he was not entitled to a particular departmental

assignment, and (b) could not assert a property interest in secondary employment. On April 26, 2004, pursuant to Federal Rule of Civil Procedure 12(b)(6), this Court dismissed Plaintiff's § 1983 claims. The Court declined to exercise jurisdiction over Plaintiff's state law claims.

Following *Diedrich I*, in November 2006, Plaintiff was transferred from the Records Division to the Recruiting Division, and assigned as a Recruiter and background investigator. (Pl.'s Compl. ¶ 30.) In that role, Plaintiff conducted background investigations on newly hired police recruits. (Pl.'s Compl. ¶ 31.) In December 2010, Plaintiff received permission from then-Chief of Police James D. Fox to apply for a Training Detective position in the Training Unit. (Pl.'s Compl. ¶ 32–33.) Deemed the most qualified for the position, Plaintiff was selected and transferred to the Training Unit on December 16, 2010. (Pl.'s Compl. ¶ 34–35.) That year, Chief Fox also permitted Plaintiff to once again hold secondary employment. (Pl.'s Compl. ¶ 38.) Thereafter, Abbitt Management hired Plaintiff as a courtesy officer. (Pl.'s Compl. ¶ 39.)

On January 16, 2014, Richard W. Myers was sworn in as Chief of Police for the Newport News Police Department. (Pl.'s Compl. ¶ 40.) On January 31, 2014, Chief Myers suspended Plaintiff's duties as Training Detective. (Pl.'s Compl. ¶ 41.) In February 2014, Chief Myers launched a review into Plaintiff's 1996 charges. (Pl.'s Compl. ¶ 44.) Plaintiff alleges that despite his exoneration, on March 16, 2014, Plaintiff was punitively transferred from the position of Training Detective to a civilian position in the Records Division and thereby suffered a significant demotion, tantamount to an outright dismissal. (Pl.'s Compl. ¶ 47.) Plaintiff was also stripped of all police authority and all secondary positions. *Id.*

Plaintiff also alleges that Defendants publicized the adverse employment actions when they ordered Sgt. Karen Bozeman of the Newport News Police Department to inform Abbitt

Management, Plaintiff's secondary employer, of the actions that were taken against Plaintiff. (Pl.'s Compl. ¶ 49.) Abbitt subsequently terminated Plaintiff's employment. *Id.*

On May 28, 2014, Plaintiff filed a grievance pursuant to Virginia Law-Enforcement Officer's Procedural Guarantee Act, Virginia Code § 9.2-500-9.2-507 and claimed a demotion and transfer for punitive reasons. (Pl.'s Compl. ¶ 51.) The City Manager's designee determined that Plaintiff's issues were "nongrievable." (Def.'s Mot. to Dismiss, Ex. G, "In Re: Jason L. Diedrich Grievance #14-06, MISC. No.: CL1401293F-15 (Grievability Appeal)".) Plaintiff appealed the decision to the Circuit Court for the City of Newport News which determined, *inter alia*, that (1) Plaintiff's transfer to the Records Unit was not a disciplinary demotion, (2) the transfer was fully within the rights reserved to the management of the City of Newport News, and (3) the matter was not grievable. *Id.* On September 23, 2014, Plaintiff filed a petition for appeal with the Supreme Court of Virginia.

On January 12, 2015, while his petition for appeal was still pending with the Supreme Court of Virginia, Plaintiff filed his Complaint. In Count One Plaintiff claims a deprivation of due process under the Fourteenth Amendment of the United States Constitution. Specifically, Plaintiff claims that Defendants' actions against him constituted a "significant demotion that was tantamount to an outright discharge, and a transfer for punitive reasons." He alleges that he has a legitimate property interest in his continued employment as a law enforcement officer and as a certified law enforcement instructor. (Pl.'s Compl. ¶ 65.) In Count Two, Plaintiff claims deprivation of liberty under the Fifth Amendment. Plaintiff claims that Defendants maintain the original allegations in his personnel file. Alleging that these claims are false because he was subsequently acquitted and reinstated, Plaintiff claims Defendants violated his liberty interest in his reputation and occupation by maintaining incorrect personnel records. (Pl.'s Compl. ¶ 74–

4

76.) In Count Three, Plaintiff alleges intentional and negligent infliction of emotional distress. (Pl.'s Compl. ¶ 81–85.)

On February 13, 2015, Defendants filed the instant motion and accompanying memorandum. (ECF Nos. 4 & 5.) Defendants argue, *inter alia*, that Plaintiff's claims are barred by res judicata. On March 2, 2015, Plaintiff filed his Response in Opposition. (ECF No. 6.) On March 16, 2015, Defendants filed their Rebuttal memorandum. (ECF No. 9.)

On July 17, 2015, Defendants filed the Supreme Court of Virginia's March 19, 2015 Opinion, which granted the City's motion to dismiss Plaintiff's petition for appeal. (ECF No. 11, Defs.' Mem. Supplement, Ex. 1.)

## II.     LEGAL STANDARDS

### A.     Fed. R. Civ. P. 12(b)(6) Motion

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of actions that fail to state a claim upon which relief can be granted. Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain sufficient factual matter which will "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When ruling on a defendant's motion to dismiss for failure to state a claim, all well-pleaded factual allegations are construed in the light most favorable to the plaintiff. *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999).

### B.     Res Judicata

The Supreme Court of the United States explained, "[t]he preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as 'res

judicata.'" *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008). While claim preclusion "forecloses 'successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit,'" issue preclusion "bars 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim." *Id.* (quoting *New Hampshire v. Maine*, 532 U.S. 742, 748–49 (2001)).

Res judicata's effect is not limited to future claims in the forum issuing the judgment. *Martin-Bangura v. Va. Dep't. of Mental Health*, 640 F. Supp. 2d 729, 735 (E.D. Va. 2009). Res judicata principles "extend[] to future claims in all federal and state courts." *Id.* Under 28 U.S.C. § 1738, federal courts must give state judicial proceedings "the same full faith and credit . . . as they have by law or usage in the courts of such State . . . from which they are taken." 28 U.S.C.A. § 1738 (West 2014). A two-step process guides a federal court in determining whether § 1738 applies to a pending federal action. *In re Genesys Data Tech., Inc.*, 204 F.3d 124, 128 (4th Cir. 2000). At the outset, the federal court "must look to state law to determine the preclusive effect of the state court judgment." *Id.* In other words, the court must determine whether the state court judgment is entitled to preclusive effect under state law. *Id.* If state law does not "bar relitigation of an issue or claim decided in the earlier proceeding . . . a federal court will not give [it] preclusive effect either." *Id.* If, however, under state law the earlier state proceeding precludes a second action, the federal court must next assess whether there is an exception to Section 1738 for the action in federal court. *Id.* Unless Congress has created an exception, the pending federal action is barred by the prior state proceeding. *Id. See also Martin-Bangura*, 640 F. Supp. 2d at 735–36.

C.  **Section 1983 Claim**

Because there is no federal statute of limitations applicable to suits under § 1983, courts borrow the relevant state's statute of limitations period for personal injury actions. *Harrison v. Prince William Cnty. Police Dep't*, 640 F. Supp. 2d 688, 701 (E.D. Va. 2009) (citing *Wilson v. Garcia*, 471 U.S. 261, 280 (1985)). *See also Purcell v. Tidewater Const. Corp.*, 458 S.E. 2d 291, 292 n.3 (Va. 1995) ("The United States Supreme Court, for purposes of consistency, has determined that actions brought pursuant to [Section 1983] . . . are, as a matter of federal law, actions for personal injury and, therefore, subject to a state's limitation period for personal injury."). Virginia applies a two-year statute of limitations to personal injury claims. *See* Va. Code Ann. § 8.01–243(A) (West 2014).

While the statutory limitations period for § 1983 actions is borrowed from state law, federal law controls when a civil rights claim accrues. *A Society Without A Name v. Virginia*, 655 F.3d 342, 348 (4th Cir. 2011) (citing *Cox v. Stanton*, 529 F.2d 47, 50 (4th Cir. 1975)). The claim accrues when the plaintiff "knows or has reason to know of the injury which is the basis of the action." *A Society Without A Name*, 655 F.3d at 348 (quoting *Cox*, 529 F.2d at 50).

A district court should not dismiss a § 1983 claim under 12(b)(6) "where fact issues related to the time of accrual make it 'impossible . . . to place the claim definitively inside or outside of the statute of limitations.'" *Hanchett v. Saline Cnty. Bd. of Comm'rs*, No. 00-2075-JWL, 2000 WL 1375276, *5 (D. Kan. Sept. 8, 2000) (quoting *Fratus v. DeLand*, 49 F.3d 673, 676 (10th Cir. 1995)).

## III. DISCUSSION

### A. Punitive Transfer Claim is Barred by Res Judicata

Defendant argues that Plaintiff's claim that his 2014 transfer back to the Records Division amounted to a punitive transfer and demotion, was fully litigated in the Newport News Circuit Court and is therefore barred by issue preclusion. Noting that Plaintiff has failed to address Defendants' res judicata arguments, the Court agrees.

Plaintiff raised the transfer issue when he elected to proceed under the City's grievance procedure, an administrative proceeding that was reviewed by the Newport News Circuit Court. *See* Virginia Code §15.2-1507(A)(9)(a) (administrative hearings are appealable to the circuit court having jurisdiction in the locality in which the grievant is employed). The City Manager's designee found that the transfer issue was nongrievable.

Plaintiff appealed the administrative decision to the Newport News Circuit Court which held that (1) the statute relating to punitive transfers did not apply to Plaintiff's case, (2) his transfer was not a disciplinary demotion, and (3) the transfer was "not grievable." Under Virginia law, the circuit court's decision is "final and is not appealable." Va. Code Ann. §15.2-1507(A)(9)(b) (West 2014). *See also City of Danville v. Franklin*, 361 S.E. 2d 634 (Va. 1987) (holding that Virginia statute made it clear that the Supreme Court of Virginia had "no power" to review an appeal from the circuit court). Plaintiff sought review by the Supreme Court of Virginia, which summarily dismissed his appeal.

1. **Issue Preclusion**

The first step in this Court's § 1738 issue preclusion analysis is to review Virginia state doctrine. The doctrine of collateral estoppel, which is encompassed by issue preclusion[1], dictates that "the same parties to a prior proceeding [are precluded] from litigating in a later proceeding any issue of fact that actually was litigated and was essential to the final judgment in the first proceeding." *Whitley v. Commonwealth*, 538 S.E. 2d 296, 299 (Va. 2000). It is irrelevant if the causes of action or the relief sought in the two proceedings differ. *Id.*

To invoke the doctrine of issue preclusion, the defendant must demonstrate that four elements are satisfied:

> (1) the parties to the two proceedings must be the same; (2) the factual issue sought to be litigated must have been actually litigated in the prior proceeding; (3) the factual issue must have been essential to the judgment rendered in the prior proceeding; and (4) the prior proceeding must have resulted in a valid, final judgment against the party to whom the doctrine is sought to be applied.

*Id.* The Court finds Defendants have carried their burden and established the required elements.

a. **Element 1**

In his action before the Newport News Circuit Court, Plaintiff sued the City of Newport News, one of the Defendants in this case. That the other three Defendants in this case, Mr. Bourey, Mr. Myers, and Ms. Manning, were not named defendants in the state action does not prevent Defendants from satisfying this first element because they satisfy the privity requirement. "[P]rivity[, which] generally involves a party so identical in interest with another that he represents the same legal right," lacks a "fixed definition . . . that automatically" applies in all cases where res judicata is raised and, therefore, must be assessed on a case-by-case basis. *Akl v. Dougherty*, Civil Action No. 06-264, 2006 WL 5363178, *3 (E.D. Va. 2006) (quoting

---

[1] *See Sturgell*, 553 U.S. at 892 n.5 (acknowledging the confusion regarding claim preclusion and issue preclusion, and stating that "issue preclusion encompasses the doctrines once known as 'collateral estoppel' and 'direct estoppel.'").

9

*Nero v. Ferris*, 284 S.E. 2d 828, 831 (Va. 1981)). Privity exists where there is a relationship between the defendants such that one defendant could have asserted the other's legal rights during the first suit. *See State Water Control Bd. v. Smithfield Foods, Inc.*, 542 S.E. 2d 766, 769 (Va. 2001) ("The touchstone of privity . . . is that a party's interest is so identical with another that representation by one party is representation of the other's legal right.").

In the instant case against Defendants Bourey, Myers, and Manning, Plaintiff has alleged the same set of circumstances and facts from the state proceeding against the City. Because the City, as their employer, could have adequately represented their rights in the state proceeding, Defendants Bourey, Myers, and Manning are in privity with the City. Having found privity, the first element is satisfied.

### b. Elements 2 – 4

As for the second, third, and fourth elements, the issue litigated in the state proceeding is the same issue raised before this Court – whether Plaintiff's transfer was a punitive transfer and demotion. That factual issue was essential to the judgment entered by the Newport News court holding that it was not. The Newport News court's decision, as reflected by Virginia law and the dismissal of Plaintiff's appeal by the Supreme Court of Virginia, resulted in a valid, final judgment against Plaintiff.

### 2. No Exception Under Section 1738

The second step in the § 1738 analysis is to determine whether Congress has created an exception to the requirement that this Court give preclusive effect to the Newport News court decision. The Court has not found, and Plaintiff has not offered, evidence of an exception. Thus, the Court finds that his § 1983 transfer claim (Count One) is barred by issue preclusion.

## B. Personnel Records Claim is Time-Barred

This is not a case where the facts related to the time of accrual make it "impossible to place the claim definitively inside or outside of the statute of limitations." *Hanchett*, 2000 WL 1375276, at *5.

In his Complaint, Plaintiff states that "[i]t is a *well-established common practice* for applicants, *especially in the law enforcement field*, to be required to sign a waiver allowing any potential employer *full* access to the personnel and internal affairs records of any applicant." (Pl.'s Compl. ¶ 75 (emphasis added).) Plaintiff actively pursued reinstatement of authorization to obtain secondary employment. His actions, coupled with his knowledge that in his field, the waiver requirement – a "well-established common practice" – would result in a potential employer gaining unrestricted access to his personnel file details and any internal affairs records, indicates to the Court that Plaintiff should have known that his personnel file contained alleged inaccurate information once he was granted permission to pursue secondary employment in 2010. Therefore, at the very latest, Plaintiff knew or had reason to know of his injury – allegedly inaccurate personnel records – in 2010 when Chief Fox permitted him to moonlight.

Indeed, considering the public nature of the criminal charges leveled against him, the administrative proceedings that followed, and the civil litigation he later pursued in this Court because he believed his employer took actions that were contrary to the resolution of those criminal charges, any reasonable person would have inquired as to the contents of one's personnel file once permitted to resume moonlighting – and particularly when one knows the general practice in one's field is to sign a waiver granting future potential employers full access to such records.

Because the applicable statute of limitations for Plaintiff's § 1983 action is two years, Plaintiff's Complaint should have been filed no later than two years from the date in 2010 when he received permission to obtain secondary employment, *i.e.*, sometime in 2012. While the exact 2010 date is unknown, from Plaintiff's statements in his Complaint, it is clear that his personnel records claim under § 1983 (Count Two) is time-barred.

The Court also notes that based on circumstances prior to 2010, Plaintiff should have known the contents of this personnel file were allegedly inaccurate. Plaintiff's employment was terminated after the criminal charges were filed and, despite his later acquittal by two juries, he was not reinstated until after a grievance panel ruling in 1996. Thus, aside from the re-authorization to resume moonlighting in 2010, a contentious turn of events of the sort that led to Plaintiff's reinstatement in 1996, would have alerted "the typical lay person to protect his or her rights." *D'Ambrosio v. Marino*, 747 F.3d 378, 384 (6th Cir. 2014).

In addition, Plaintiff's suit in *Diedrich I*, which challenged his first assignment to the Records Division and the revocation of permission to engage in secondary employment, indicates to the Court that Plaintiff knew in 2002 that his personnel file contained the allegedly offending material. In his Complaint in the instant case, Plaintiff repeatedly claims these charges were proved false when he was acquitted and reinstated in 1996. In this suit he states that Defendants "use[d] the exact same charges against the Plaintiff" that they used for the "transfer and restrictions that took place in 2002." (Pl.'s Mem. in Opp. 2.) In other words, this is not the first time Defendants used these allegedly false charges against Plaintiff; they used them in 2002.

Indeed, Defendant contends that these charges were in Plaintiff's file in 2002, and had been in his file since they were brought in 1996. (Defs.' Mem. in Supp. 20; Defs.' Reply 12.) Plaintiff does not dispute this point. Indeed, as with Defendants' res judicata arguments, Plaintiff

has failed to address their statute of limitations contention. Given that these charges were in his file during his first transfer in 2002, and that he knew these charges were the basis of that prior transfer, Plaintiff knew then that his file contained allegedly inaccurate information.

Having found that Plaintiff's personnel records claim is time barred, the Court need not address Defendant's argument that the claim is also barred by claim preclusion.

### C.    Plaintiff's Remaining State Law Claim

In light of the Court's granting of Defendants' Motion to Dismiss as to Counts One and Two, only Plaintiff's state law claims of intentional and negligent infliction of emotional distress (Count Three) remain. The Court declines to exercise jurisdiction over Count Three. *See United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966) (holding that a district court has discretion to decline the exercise of jurisdiction over state law claims when the associated federal claims no longer remain). Plaintiff may take such action as he deems necessary to pursue these claims in other proceedings.

### IV.    CONCLUSION

For these reasons, Defendants' 12(b)(6) Motion to Dismiss Counts One and Two is **GRANTED**. The Court **DECLINES** to exercise jurisdiction over Plaintiff's state law claims (Count Three) and they are hereby **DISMISSED**. Because Plaintiff's Fifth Amendment and due process claims have been disposed of, the Court does not need to reach the qualified immunity issue raised by Defendants.

The Clerk is **DIRECTED** to send a copy of this Order to counsel of record.

**IT IS SO ORDERED.**

Norfolk, Virginia
August 11, 2015

Raymond A. Jackson
United States District Judge